# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>REAL PROPERTY KNOWN AS 6421 BREAK )<br>POINT AVENUE, CLARK COUNTY, LAS )<br>VEGAS, NEVADA, LEGALLY DESCRIBED )<br>AS LOT SEVENTY-NINE (79) IN BLOCK B )<br>OF SPORTSMAN PARK UNIT NO. 4, AS )<br>SHOWN BY MAP THEREOF ON FILE IN )<br>BOOK 66 OF PLATS, PAGE 63, IN THE )<br>OFFICE OF THE COUNTY RECORDER OF )<br>CLARK COUNTY, NEVADA, WITH ALL )<br>APPURTENANCES AND IMPROVEMENTS )<br>THEREON (APN: 125-35-216-005), )<br>)<br>Defendant. ) | 2:02-cv-0636-PMP-RJJ |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER OF FORFEITURE

This cause came before the Court on plaintiff's Motion for Summary Judgment. This matter was submitted to the Court for decision, and the Court, being fully advised in the premises on the facts and the law, makes its findings of fact, conclusions of law, and order and judgment of forfeiture as follows.

## I. FINDINGS OF FACT

### A. PROCEDURAL HISTORY

The United States filed a verified Complaint for Forfeiture In Rem against the defendant property on May 3, 2002. Docket #1. The Complaint alleges Real Property Known as 6421 Break Point Avenue, Clark County, Las Vegas, Nevada, Legally Described as Lot Seventy-nine (79) in Block B of Sportsman Park Unit No. 4, as Shown by Map Thereof on File in Book 66 of Plats, Page 63, in the Office of the County Recorder of Clark County, Nevada, with All Appurtenances and Improvements Thereon (APN: 125-35-216-005) ("6421 Break Point Avenue"):

is property used in, to aid in, or to facilitate, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of articles which were introduced into the United States in violation of 18 U.S.C. §§ 542 and/or 545, and is therefore subject to forfeiture to the United States pursuant to 19 U.S.C. § 1595a;

is real property that was used or was intended to be used to commit or to facilitate the commission of a violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, that is punishable by more than one year's imprisonment, and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7);

is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §§ 542 and/or 545 or of an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, and is therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C); and

constitutes proceeds traceable to the exchange of controlled substances in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6). #1.

Pursuant to the Order for Service and Publication of Notice (#2) filed on May 16, 2002, the Complaint (#1), the Order (#2), and the Notice of Complaint for Forfeiture (#6) were regularly served upon the defendant property, and the Notice (#6) was published according to law. #6. All persons interested in the defendant property were required to file their claims with the Clerk of the Court within 30 days of the publication of the Notice (#6) or within 30 days of actual notice of this action, as applicable, followed by the filing of an answer to the Complaint (#1) within 20 days after the filing of their respective claims.

On August 15, 2002, the United States Customs Service posted the Notice on the defendant property. #6.

Public notice of the forfeiture action was given to all persons and entities by publication in the Las Vegas Sun on September 19, September 25, and October 2, 2002. #11.

2

1    On August 15, 2002, Kevin Tate, Assistant Federal Public Defender, was personally served

2 on behalf of his client, Christian Finze ("Finze"), with copies of the Complaint (#1), the Order (#2),

3 and the Notice (#6). #6.

4    On August 15, 2002, Christian Finze was personally served with copies of the Complaint

5 (#1), the Order (#2), and the Notice (#6). #6.

6    On August 15, 2002, the Clark County Treasurer's Office was personally served with copies

7 of the Complaint (#1), the Order (#2), and the Notice (#6). #6.

8    On August 15, 2002, the Clark County Assessor's Office was personally served with copies

9 of the Complaint (#1), the Order (#2), and the Notice (#6). #6.

10    On August 15, 2002, the Board of County Commissioners of Clark County, Nevada, as

11 Trustees of the Water and Sanitation District, was personally served with copies of the Complaint

12 (#1), the Order (#2), and the Notice (#6). #6.

13    On August 15, 2002, the City of Las Vegas was personally served with copies of the

14 Complaint (#1), the Order (#2), and the Notice (#6). #6.

15    On September 3, 2002, Christian Finze filed his Verified Claim asserting an interest in 6421

16 Break Point Avenue. #5.

17    On September 10, 2002, the Clark County Treasurer filed an Answer to Complaint for

18 Forfeiture in Rem. #8.

19    On September 12, 2002, the Clark County Treasurer filed a Verified Claim. #9.

20    On October 17, 2002, the Court entered an order approving the Stipulation between the

21 United States and the Clark County Treasurer whereby the United States agreed to pay any unpaid real

22 property taxes upon sale of the defendant property and the Clark County Treasurer consented to the

23 entry of a final judgment or order of forfeiture of the defendant property to the United States. #10.

24    On January 22, 2003, pursuant to Finze's Motion to Stay Civil Forfeiture Pending Outcome

25 of Criminal Proceeding (#4), the Court ordered this case stayed pending resolution of the related

26 criminal prosecution. #12.

3

1        On September 17, 2003, Davis pled guilty to Count One of the Superceding Indictment,

2   Conspiracy to Defraud the United States in violation of Title 18, United States Code, Section 371 (Ex

3   1) and was sentenced on February 9, 2004 (Ex 2).

4        On August 25, 2004, a federal grand jury convened in this District returned a Second

5   Superceding Criminal Indictment in *United States v. Christian Frederic Finze*, case number 2:02-cr-

6   0288-PMP-RJJ, charging him with Conspiracy to Defraud the United States in violation of 18 U.S.C.

7   § 371; Submission of False Writings to an Agency of the United States in violation of 18 U.S.C. §

8   1001; Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. § 846; Conspiracy to

9   Import Controlled Substances in violation of 21 U.S.C. § 963; Distribution of Controlled Substances

10  in violation of 21 U.S.C. § 841; Money Laundering in violation of 18 U.S.C. § 1957; and Aiding and

11  Abetting in violation of 18 U.S.C. § 2. Ex 3.

12       On October 28, 2004, Finze was convicted on all counts of the Second Superceding Criminal

13  Indictment. Ex 4.

14       In the criminal case on May 9, 2005, the Court entered an Order (Ex 5) granting the

15  Government's Memorandum in Support of Forfeiture (Ex 6) and filed a Preliminary Order of

16  Forfeiture (Ex 7) finding "the United States has shown a nexus between property set forth in the

17  Forfeiture Allegations of the Second Superseding Criminal Indictment [including the defendant real

18  property in this case] and the offenses of which defendant [Finze] was found guilty."

19       Following the criminal trial, on October 11, 2005, the Court, pursuant to the United States's

20  Application for an Order to Lift the Stay and for Service of Process (#13), lifted the stay and

21  authorized the completion of service of process. #15.

22       On November 28, 2005, Joan Davis was personally served with copies of the Complaint (#1),

23  the Order (#2), and the Notice (#6). #16, p. 3.

24       On December 1, 2005, Sera Finze was served by DHL Worldwide Express with copies of the

25  Complaint (#1), the Order (#2), and the Notice (#6). #16, p. 4.

26   .   .   .

On March 8, 2006, the Court entered an order approving the Stipulation between the United States and the City of Las Vegas whereby the United States agreed to pay the City's unpaid sewer lien upon sale of the defendant property and the City consented to the entry of a final judgment or order of forfeiture of the defendant property to the United States. #18.

On March 27, 2006, the Court entered an order approving the Stipulation between the United States and the Clark County Treasurer (#19) whereby the United States agreed to pay additional unpaid real property taxes upon sale of the defendant property and the Clark County Treasurer consented to the entry of a final judgment or order of forfeiture of the defendant property to the United States. #20.

**B. UNDISPUTED STATEMENT OF FACTS**

1. Finze was the director of Vinci American.

2. Vinci American was connected to the Vinci-online website.

3. Finze designed, created, and worked on the Vinci-online website at 6421 Break Point Avenue and is the webmaster.

4. The "CFF" in CFF Pharma Consult stands for Christian Frederic Finze, and Pharma Consult is how Finze's business was referred to in Germany.

5. Finze's website indicated to customers the shipping of controlled substances would be done "discreetly."

6. Finze admitted on his website that he operated his illegal prescription-selling business for at least five years.

7. Finze had the FDA's website designated as a favorite on his computer.

8. By providing customers information relating to seizures by Customs and the FDA, Finze knew his importation and sale of controlled substances were in violation of federal law.

9. Although the information contained on prescription drugs used in the United States must be in English, Finze's "Products Page" indicated that information slips were in German. The language printed on the packaging of the prescription drugs seized by the investigating agents was German.

Packages ordered through Vinci-online had German labels, which were not FDA-approved labels because they were not in English.

10. Finze sold controlled substances to undercover agents on two separate occasions.

11. Investigating agents seized numerous business documents, financial records, invoices, e-mails, and prescription drugs evidencing conspiracy to import, conspiracy to distribute, and distribution of controlled substances at 6421 Break Point Avenue.

12. The invoices evidencing the conspiracies and distribution of controlled substances were organized in hanging folders by month and year at 6421 Break Point Avenue.

13. Investigating agents seized from 6421 Break Point Avenue a training document explaining how to process orders for controlled substances and how to produce invoices for those orders.

14. Investigating agents seized from Finze's computer at 6421 Break Point Avenue (1) a prescription; (2) templates of the United States Customs Service sign and symbol; and (3) a letter that purported to be from the United States Customs Service headquarters.

15. A copy of the same letter seized from Finze's computer and•from 6421 Break Point Avenue was recovered from the package containing Xanax which was sent from CFF Pharma Consult to Randi Landriz.

16. Packaging sent to various customers, which was identified as being unique to Finze's and Davis's operation, contained large amounts of controlled substances.

17. Davis, who was intimate with Finze, provided specific details as to their criminal operation to import and to distribute controlled substances from 6421 Break Point Avenue.

18. Davis worked for Vinci-online as a customer service representative and was responsible for handling and processing customer orders for prescription drugs at 6421 Break Point Avenue.

19. Finze and Davis used a computer at 6421 Break Point Avenue to perpetrate the scheme of Vinci Enterprises and distribute illegal drugs.

. . .

6

20.  Finze gave Davis a laptop, taught Davis how to use a computer, set up an e-mail account for her, taught her how to access e-mail, and updated the Vinci-online website to direct customer inquiries to Davis at 6421 Break Point Avenue.

21.  Finze named Davis as secretary on Vinci Pharma's board of directors.

22.  Davis prepared invoices for illegal prescription drug orders at 6421 Break Point Avenue.

23.  During the execution of the criminal scheme, Davis depended entirely on Finze's judgment and instruction concerning the legality of selling the drugs.

24.  When Davis had questions during her computation of drug quantities and prices for invoices, Davis would ask Finze for clarification and instruction by either e-mailing him or by printing the question and leaving it for him to find so that they could go over things Davis needed answers to the next time they met.

25.  On several occasions, Davis looked to Finze for guidance with respect to whether customers should be required to present valid prescriptions.  Finze did not require the prescriptions.

26.  Eventually, Davis did most of the order processing, responding to customer e-mails and such at 6421 Break Point Avenue because Finze became comfortable with Davis assuming most of the responsibility for processing customers' orders.

27.  Finze knew his selling of illegal prescription drugs was illegal because he included information in his website instructing customers what to do if their packages were intercepted by government officials.

28.  Finze and Davis knew of the possibility that Customs would detain a parcel containing prescription drugs shipped into the United States illegally.

29.  Finze used the German Postal System instead of an express carrier such as FedEx because FedEx was extremely stringent regarding the contents of their parcels and had the time to scrutinize their parcels more closely and, thus, were more likely to open them and discover the illegal controlled substances that Finze was shipping to the United States.  One customer, whose parcel was shipped via FedEx, had his parcel intercepted and notified Vinci-online.

30. Customers who purchased illegal controlled substances from Vinci-online were instructed to purchase either a money order or a cashier's check and to send payment with a copy of the invoice to 6421 Break Point Avenue.

31. Upon receipt of payment at 6421 Break Point Avenue, Davis would note the payment on a lined business tablet for tracking. Davis would also use a deposit slip and note the amount of the money order on the back of the check and total it. Davis would eventually deposit the cashier's check or money order into the Vinci-online business account.

32. The cashier's checks made payable to CFF Pharma were mailed directly to the bank in Germany.

33. The deposits into the Vinci American bank account of the customers' cashiers checks or money orders for the Vinci-online illegal prescription drug orders totaled $575,432.00.

34. When it was time to prepare one, two, or three weeks' accumulation of paid invoices, Davis would prepare a tally of all the medicines required to fill each invoice. These orders were eventually completed and shipped to the customers.

35. Finze, Sera, and Davis obtained pharmaceutical medicines from two companies in Germany called Phoenix and Eurim.

36. Finze and Davis faxed, and Sera received in Germany, the orders for illegal prescription drugs of the customers in the United States. In Germany, Sera physically picked up the prescription drugs from the two pharmaceutical companies. Though Sera did not have a pharmaceutical background, she physically put together the packages of the illegal prescription drugs that were shipped to the customers of the United States.

37. Although Davis does not communicate in German, she communicated universally understandable terms with Phoenix and Eurim; however, once a formal request was required, it came from Finze, who was able to speak German.

38. Finze had approximately six to eight women working in Germany to assist his criminal enterprise of selling illegal prescription drugs from 6421 Break Point Avenue.

8

39.   Finze used the services of Sera Finze, Hans Jurgen Kellner, and Helga Gerling in Germany to carry out the criminal scheme to import and to distribute controlled substances.

40.   Finze processed some customers' orders for illegal controlled substances himself.

41.   Due to Davis's involvement in the criminal scheme to import and to distribute illegal controlled substances, she knew that a parcel shipped from the German Post Office to the United States, with insurance up to a certain amount, cost very close to $33.00; this amount was almost always added to American customers' orders.

42.   Several people purchased illegal controlled substances, without a prescription, through Vince-online.

43.   Thirty-one seizures were made from various pieces of mail that came through the JFK mail facility from CFF Pharma in Germany, all of which contained various controlled substances that are not allowed entry into the United States.

44.   Finze sold illegal controlled substances without a prescription to customers in quantities that far exceeded a normal prescription for an average dose.

45.   FDA requires that a licensed health care provider determine that a patient has a medical problem that will potentially benefit from taking a controlled substance; therefore, FDA requires a valid prescription to obtain controlled substances.

46.   Finze did not require customers to provide valid prescriptions for the drugs they ordered from him through his website.

47.   Schedule I drugs are not prescribed because they have no accepted medical use.  To prescribe any controlled substances listed in Schedules II through V, a physician must have a DEA registration number.  Any entity distributing controlled substances in Schedules II through V in the United States must be registered with DEA.  If an entity is not registered with the DEA, that entity cannot legally import, export, distribute, or dispense controlled substances.

.   .   .

.   .   .

48. A physician cannot write a prescription in the United States for a drug that is not approved in the United States, and no pharmacist in the United States can dispense a drug that is not approved in the United States.

49. Vinci America, Limited; Vinci-online.com; Joan Davis; CFF Pharma Consult; GmbH, and Christian Frederich Finze are not DEA registrants.

50. Finze, Davis, and Sera illegally distributed 6,050 pills, tablets, or capsules of Schedule I controlled substances. Finze, Davis, and Sera illegally distributed 387,197 pills, tablets, or capsules of Schedules II through IV prescription drugs. Finze, Davis, and Sera distributed 7,360 tablets of Rohypnol, an illegal controlled substance.

51. Rohypnol and Valoron, which are not approved drugs in the United States and cannot be dispensed in the United States, were sold through Vinci-online.

52. As part of the criminal scheme, Finze and Davis instructed customers to send their invoices and payments for the illegal prescription drugs and the controlled substances to 6421 Break Point Avenue.

53. The computer used to carry out the essential work of Finze's scheme of selling illegal prescription drugs was located at and was used at 6421 Break Point Avenue.

54. Sometimes Finze's customers would mail information and/or requests to 6421 Break Point Avenue.

55. Parcels containing illegal prescription drugs from Germany arrived at 6421 Break Point Avenue.

56. The false United States Customs Service document used by Finze listed a return facsimile number, (702) 395-2231, which is subscribed to 6421 Break Point Avenue.

57. When Agent Allan conducted and caused another agent to conduct undercover purchases of controlled substances from Finze, the agents sent their payments, but not prescriptions which were required, to Finze at 6421 Break Point Avenue.

10

58. Investigating agents seized two computers used by Finze to commit the crimes of conviction along with numerous business documents, financial records, invoices, e-mail, and prescription drugs from 6421 Break Point Avenue.

59. Live checks, that had invoices, had no prescriptions, and had not yet deposited, were found and were seized during the search of 6421 Break Point Avenue.

60. Finze's business card listing himself as "President Vinci American, Limited, Las Vegas; CEO of CFF Pharma Consult, Limited, Germany; director of Vinci Pharmaceuticals, Limited, and partners in Kenya; managing director, Linda Roberts Black and Achai, worldwide financial consulting" on one side listed the address of 6421 Break Point Avenue on the other side.

61. Finze's computer, from which agents seized an Urbason prescription with no signature, was stored on the premises of 6421 Break Point Avenue.

62. Investigating agents seized paid invoices relating to five Customs intercepts at the 6421 Break Point Avenue.

63. Approximately 2,400 invoices from approximately 1,200 customers ordering illegal prescription drugs were located at and were seized from 6421 Break Point Avenue.

64. Finze, Davis, and Sera used 6421 Break Point Avenue to advertise the sale of, to prepare invoices for, to sell, to receive the proceeds of, to receive, to aid in, or to facilitate, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of illegal controlled substances. 6421 Break Point Avenue was used or was intended to be used to commit or to facilitate the distribution of illegal controlled substances, and to send the drug proceeds to Germany. Finze, Davis, and Sera also used 6421 Break Point Avenue as the base of their drug business operation where they stored the orders, the invoices, the drug proceeds, the drugs, and the false documents.

Any finding of fact construed to constitute a conclusion of law is hereby adopted as a conclusion of law to the same effect as if it had been so designated.

.   .   .

.   .   .

11

## II. CONCLUSIONS OF LAW

This Court has jurisdiction under 18 U.S.C. § 985; 19 U.S.C. §§ 1595a, 1603, 1608, and 1610; 21 U.S.C. § 881(a)(7); 28 U.S.C. §§ 1345, 1355, and 1395; and Supplemental Rules for Certain Admiralty and Maritime Claims.

This Court has venue under 21 U.S.C. § 881(j) and 28 U.S.C. § 1395.

It is a violation of 18 U.S.C. § 542 when one enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties. 18 U.S.C. § 542.

It is a violation of 18 U.S.C. § 545 when one fraudulently and knowingly imports or brings into the United States, any merchandise contrary to law or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law. 18 U.S.C. § 545.

It is a violation of 21 U.S.C. § 841(a)(1) when one, knowingly or intentionally, distributes, or dispenses, or possesses with intent to distribute, or to dispense, a controlled substance. 21 U.S.C. § 841(a)(1).

It is a violation of 21 U.S.C. § 846 when one, knowingly or intentionally, attempts or conspires to distribute, or to dispense, or to possess with intent to distribute, or to dispense, a controlled substance. 21 U.S.C. § 846.

. . .

. . .

1    It is a violation of 21 U.S.C. § 952(a) when one imports into the customs territory of the

2    United States from any place outside thereof, any controlled substance in schedule I or II or any

3    narcotic drug in schedule III, IV, or V. 21 U.S.C. § 952(a).

4    It is a violation of 21 U.S.C. § 952(b) when one imports into the customs territory of the

5    United States from any place outside thereof, any nonnarcotic controlled substance in schedule III, IV,

6    or V. 21 U.S.C. § 952(b).

7    "Controlled substance," "dispense," "distribute," "drug," "narcotic drug," "United States,"

8    and "felony drug offense" have the meanings given in the statute. 21 U.S.C. § 802(6), (10 -12), (17),

9    (28), and (44).

10   The United States must show and did show by probable cause that 6421 Break Point Avenue

11   (1) was used in, to aid in, or to facilitate, by any way, the importation, bringing in, unlading, landing,

12   removal, concealing, harboring, or subsequent transportation of Schedule I, II, III, IV, and V drugs

13   which are being or have been introduced, or attempted to be introduced, into the United States

14   contrary to law; and (2) was connected with the violations of 18 U.S.C. §§ 542 and 545. 18 U.S.C. §§

15   542 and 545; 19 U.S.C. §§ 1959a and 1615; *United States v. $129,727 United States Currency*, 129

16   F.3d 486, 492 (9th Cir. 1997); *United States v. Real Property Located at 5208 Los Franciscos Way,*

17   *Los Angeles, Cal.*, 385 F.3d 1187, 1193 (9th Cir. 2004), *cert. denied*, 544 U.S. 1050, 125 S. Ct. 2311

18   (2005).

19   The United States must show and did show by a preponderance of the evidence that 6421

20   Break Point Avenue (1) was used or was intended to be used, in any manner or part, to commit, or to

21   facilitate the commission of, a violation of title 21 U.S.C. §§ 841(a)(1), 846, or 952(b), which is

22   punishable by more than one year's imprisonment; and (2) had a substantial connection with the

23   violations of 21 U.S.C. §§ 841(a)(1), 846, or 952(b). 18 U.S.C. § 983(c)(1); 21 U.S.C. § 881(a)(7);

24   *5208 Los Franciscos Way*, 385 F.3d at 1193; *United States v. Real Property Located at 25445 Via*

25   *Dona Christa*, 138 F.3d 403, 407-408 (9th Cir. 1998).

26   .   .   .

1   Davis and Sera failed to file claims and answers to the complaint for forfeiture and therefore

2   lack statutory standing to contest the civil forfeiture of 6421 Break Point Avenue. Fed. R. Civ. P.

3   Supp. Rule C(6)(a)(i)(A) and (iii); 18 U.S.C. § 983(a)(4)(A) and (B); *United States v. Real Property*

4   *Known as the Lido Motel*, 135 F.3d 1312, 1317 (9th Cir. 1998).

5   Finze failed to file an answer to the complaint for forfeiture and therefore lacks statutory

6   standing to contest the civil forfeiture of 6421 Break Point Avenue. Fed. R. Civ. P. Supp. Rule

7   C(6)(a)(iii); 18 U.S.C. § 983(a)(4)(B); *Lido Motel*, 135 F.3d at 1317.

8   There is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Anderson v. Liberty*

9   *Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

10   The United States is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson*,

11   477 U.S. 242; *Celotex Corp.*, 477 U.S. 317.

12   Any conclusion of law construed to constitute a finding of fact is hereby adopted as a

13   finding of fact to the same extent as if it had been so designated.

**ORDER OF FORFEITURE**

15   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff's Motion for

16   Summary Judgment is granted.

17   IT IS FURTHER ORDERED, ADJUDGED, and DECREED that all persons claiming any

18   right, title, and interest in or to Real Property Known as 6421 Break Point Avenue, Clark County, Las

19   Vegas, Nevada, Legally Described as Lot Seventy-nine (79) in Block B of Sportsman Park Unit No.

20   4, as Shown by Map Thereof on File in Book 66 of Plats, Page 63, in the Office of the County

21   Recorder of Clark County, Nevada, with All Appurtenances and Improvements Thereon (APN: 125-

22   35-216-005) no longer have any right, title or interest in or to Real Property Known as 6421 Break

23   Point Avenue, Clark County, Las Vegas, Nevada, Legally Described as Lot Seventy-nine (79) in Block

24   B of Sportsman Park Unit No. 4, as Shown by Map Thereof on File in Book 66 of Plats, Page 63, in

25   the Office of the County Recorder of Clark County, Nevada, with All Appurtenances and

26   Improvements Thereon (APN: 125-35-216-005).

14

1    IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the United States will pay

2  the City of Las Vegas's unpaid sewer lien upon sale of the defendant property pursuant to the

3  Stipulation and Order between the United States and the City which the Court entered on March 8,

4  2006 (#18).

5    IT IS FURTHER ORDERED, ADJUDGED, and DECREED that the United States will pay

6  Clark County the unpaid real property taxes upon sale of the defendant property pursuant to the

7  Stipulation and Order between the United States and Clark County which the Court entered on March

8  27, 2006 (#20).

9    IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Real Property Known as

10  6421 Break Point Avenue, Clark County, Las Vegas, Nevada, Legally Described as Lot Seventy-nine

11  (79) in Block B of Sportsman Park Unit No. 4, as Shown by Map Thereof on File in Book 66 of Plats,

12  Page 63, in the Office of the County Recorder of Clark County, Nevada, with All Appurtenances and

13  Improvements Thereon (APN: 125-35-216-005) is condemned and is forfeited to the United States

14  of America, and shall be disposed of according to the law, subject to the costs incurred by the United

15  States of America.

16

17  _____
     PHILIP M. PRO, Chief Judge
18  UNITED STATES DISTRICT JUDGE

     Dated:  June 23, 2006  _____
19

20

21

22

23

24

25

26

15